Admission of the Written Statement
As to her written statement, Ms. Tillitt renewed her motion to suppress during trial and specifically objected to its admission as a Fifth Amendment self-incrimination violation, but did not argue the other, more specific grounds set forth in the motion, such as that the "interrogation" was "inherently coercive" or a due-process violation. The trial court asked counsel if this was "the extent of your record? Is that all your record?" Counsel responded, "Yes." Ms. Tillitt raised an involuntariness challenge indirectly by reference to her motion to suppress statements in her post-trial motion and on appeal. To the extent that Ms. Tillitt's renewal of her motion to suppress when she objected to the admission of her written statement was sufficient to incorporate each of grounds she raised therein as part of her argument, we address this issue on the merits and determine whether the trial court's ruling was supported by substantial *580 evidence. Barriner , 210 S.W.3d at 299 (noting that while we do not overturn the trial court's ruling "absent manifest error," the voluntariness of the confession "must appear from the record with unmistakable clarity"). Ms. Tillitt was highly emotional during the police interview, but the officer calmly led her to her admissions, which are reflected in the written statement, by suggesting that she could break the cycle of sexual abuse in the family and everyone could get the help they needed if she confirmed what just one of the daughters at that point had disclosed. No threats or promises were recorded, and it is apparent that Ms. Tillitt trusted the police officer sufficiently or felt comfortable enough with him to reveal to him on the way to the police station that she had been a child sexual-abuse victim. The voluntariness of her written confession is supported by substantial evidence, and this appears from the record with unmistakable clarity. The trial court did not err in admitting Ms. Tillitt's written statement. This point is denied.
In the second point, Ms. Tillitt claims that the trial court abused its discretion in overruling her objection to the admission of Ms. Wemhoff's testimony about a child-abuse victim's process of disclosure. She contends that her due-process and fair-trial rights were denied "in that the testimony of [Ms.] Wemhoff was more prejudicial than probative, and it was improperly used to bolster [the victims'] credibility." Trial courts have broad discretion over the admissibility of evidence, and a trial court's "determination on these issues will not be reversed absent an abuse of discretion." State v. Collins , 962 S.W.2d 421, 424 (Mo. App. W.D. 1998). "Abuse of discretion only occurs if 'a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.' If reasonable minds could differ on the propriety of the ruling, no abuse of discretion has occurred." State v. Benedict , 319 S.W.3d 483, 487 (Mo. App. S.D. 2010) (citations omitted).
Ms. Tillitt argues that almost no other evidence corroborated the victims' testimony, the process-of-disclosure evidence unnecessarily diverted the jury's attention, and, because the jury could assess the victims' credibility, the State improperly bolstered the victims' testimony with this evidence. Ms. Wemhoff testified generally about the process of disclosure, stating that "disclosure is not just an all or nothing one-time event. It typically is a process that happens over, like over time. And it kind of happens along a continuum." She elaborated as follows:
So as I've already mentioned the delayed disclosure is common and denial is common, so the continuum starts with no disclosure or denial of any abuse and goes from there to tentative or unconvincing disclosure where a child might be testing the water, getting a little bit of information. And then it ranges to full disclosure of events that a child has experienced. In addition to that in some cases children will recant and reaffirm their original statements.
At no point did Ms. Wemhoff testify that she believed the girls or that they, in particular, shared these characteristics.
In State v. Churchill , 98 S.W.3d 536, 539 (Mo. banc 2003), our supreme court distinguished between general and particularized expert testimony in sexual-abuse cases involving children. In this regard, it stated,
General testimony describes a "generalization" of behaviors and other characteristics commonly found in those who have been the victims of sexual abuse. Particularized testimony is that testimony concerning a specific victim's credibility as to whether they have been abused. The trial court has broad discretion in admitting general testimony, but when *581 particularized testimony is offered, it must be rejected because it usurps the decision-making function of the jury and, therefore, is inadmissible.
Id. We do not find that the trial court's ruling was against the logic of the circumstances and so unreasonable as to indicate a lack of careful consideration. The trial court invited argument on this issue both before and during trial and was familiar with the Churchill principle distinguishing between general and particular behavioral testimony in child sexual-abuse cases. Juries certainly assess witness credibility, but are unlikely to know, in the absence of expert testimony, that child sexual-abuse victims disclose differently than adults. The trial court did not abuse its discretion in overruling Ms. Tillitt's objection to this testimony. This point is denied.
In the third and final point, Ms. Tillitt claims plain error in the trial court's decision to impose consecutive sentences for each of the six counts. She contends that its comments during sentencing about section 558.026 constituted "an incorrect statement of the law." She did not object to the court's purported misunderstanding of the law when the sentence was imposed, and, in fact, her counsel also believed that this section required consecutive sentences. We agree that the case must be returned to the trial court for resentencing.
In Williams , this Court stated that, as a matter of plain-error review, when "a court sentences a defendant based on a mistaken belief of the available range of punishment, it commits evident, obvious, and clear error, and such error results in manifest injustice if left uncorrected." Williams , 465 S.W.3d at 519. The current version of section 558.026 took effect August 28, 2013. The final alleged offense here occurred in June 2013. Under section 1.160(2), "a defendant will be sentenced according to the law in effect at the time the offense was committed unless a lesser punishment is required by a change in the law creating the offense itself." State v. Johnson , 150 S.W.3d 132, 138 (Mo. App. E.D. 2004). The version of section 558.026 that was in effect when the offenses underlying Ms. Tillitt's convictions occurred was the same as the version that the Missouri Supreme Court specifically found ambiguous in Williams v. State , 800 S.W.2d 739 (Mo. banc 1990), superseded by statute as stated in State v. Contreras-Cornejo , 526 S.W.3d 146, 153 (Mo. App. W.D. 2017). The versions of section 558.026.1, as amended in 1983 and 1995, stated,
Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except that, in the case of multiple sentences of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid and for other offenses committed during or at the same time as that rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid, the sentences of imprisonment imposed for the other offenses may run concurrently, but the sentence of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid shall run consecutively to the other sentences.
According to our supreme court, "[t]he statute establishes two kinds of offenses for sentencing purposes-the listed offenses and 'other offenses.' It states clearly what the court must do if the defendant is convicted of an offense in each class." Id. at 740. Because the statute "does not, however, say in explicit language what must be done if there are multiple convictions of those offenses listed," the court determined that it was ambiguous and the ambiguity must be resolved "in favor of according *582 the trial court maximum discretion." Id.
Here, the court, the prosecutor, and defense counsel all agreed and stated on the record that the sentences for multiple convictions of first-degree statutory sodomy were required under the law to run consecutively. The trial court imposed fifteen years of imprisonment on each of the six counts, which was within the statutory ranges, but believed that it was compelled by statute to impose those terms consecutively.[9] As the supreme court determined in Williams , because "[w]e cannot say that the judge might not have pronounced a less severe sentence if he thought he had discretion to do so," we must remand for resentencing. Id. at 741. See also Williams , 465 S.W.3d at 520 (" 'A sentence passed on the basis of a materially false foundation lacks due process of law ... [t]his is so even if it is likely the court will return the same sentence.' " (citations omitted)). This point is granted.
Conclusion
Because the trial court did not err in admitting evidence relating to Ms. Tillitt's police interview or in admitting the forensic interviewer's generalized statements about the process of disclosure, we affirm her conviction for five counts of first-degree statutory sodomy and one count of first-degree child molestation. The trial court plainly erred, however, in believing that it had no discretion and was required to impose consecutive sentences for her convictions of these crimes. Accordingly, we reverse and remand solely for resentencing.
Anthony Rex Gabbert, P.J., and Gary D. Witt, JJ. concur.

Three of the counts involved conduct that allegedly occurred when K.B.T. was younger than age 12; they carried a potential sentence of life imprisonment or a term of not less than ten years. § 566.062.2. The fourth count involved conduct that allegedly occurred when K.B.T. was younger than age 14; it carried a potential sentence of life imprisonment or a term of not less than five years. § 566.062.2. The fifth count involved conduct that allegedly occurred when K.D.T. was younger than age 12; it carried a potential sentence of life imprisonment or a term of not less than ten years. § 566.062.2. The sixth count, first-degree child molestation, involved conduct that allegedly occurred when K.D.T. was younger than age 14; it carried a potential sentence of five to fifteen years. § 558.011.1(2).