

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI,          )
          )
       Respondent,       )
          )
v.          )       WD80880
          )
ISIDRO CRUZ-BASURTO,      )       Opinion filed:  March 26, 2019
          )
       Appellant.        )

**APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
THE HONORABLE KEVIN D. HARRELL, JUDGE**

Before Division Two:  Edward R. Ardini, Jr., Presiding Judge,
Alok Ahuja, Judge and Gary D. Witt, Judge

Isidro Cruz-Basurto appeals his convictions and sentences for four counts of statutory sodomy in the first degree and two counts of child molestation in the first degree following a jury trial in the Circuit Court of Jackson County. On appeal, he alleges that the trial court erred by overruling his objections to certain verdict directors and plainly erred by imposing consecutive sentences on the statutory sodomy counts based on a mistaken belief that it was obligated by law to do so. We affirm.

## Factual and Procedural Background[1]

Victim was born on December 10, 2004. When Victim was seven years old and in the first grade, she lived with her mother and siblings in Kansas City. Beginning around that time, Victim and her siblings would visit the home of Cruz-Basurto on weekends. Cruz-Basurto is Victim's uncle.

When Victim was alone with Cruz-Basurto, he would take her to his bedroom, close and lock the door, and instruct her to take off her clothes. Cruz-Basurto would throw Victim onto the bed and touch her on her "chest," "front," and "back."[2] Cruz-Basurto would touch Victim's chest under her shirt "most of the times." Cruz-Basurto would touch both the inside and the outside of Victim's "front," and sometimes it hurt. Cruz-Basurto would "sometimes touch[ ]" Victim's "back" "in [the] inside," and "he sometimes put his private in [Victim] right there." When Cruz-Basurto put his "private" in her "back," Victim felt "something nasty" that "felt like liquid." This conduct happened multiple times beginning when Victim was in the first grade and continued during second and third grade. Cruz-Basurto instructed Victim not to disclose the abuse to her mother which caused Victim concern that Cruz-Basurto would do harm to her brothers and mother if she reported the conduct to others.

Around July 3, 2014, when Victim was nine years old, she disclosed to a friend and subsequently to a teacher that she had been inappropriately touched by Cruz-Basurto. Victim was then interviewed by investigators from the Children's Division, police officers, and a forensic interviewer from the Child Advocacy Center. Victim stated that the last act of abuse by Cruz-Basurto had occurred a month before her disclosure to her friend.

---

[1] The facts are presented in the light most favorable to the jury's verdict. *State v. Baumruk*, 280 S.W.3d 600, 607 (Mo. banc 2009).

[2] Victim used the word "chest" to describe her breasts, "front" to describe her vagina, and "back" to describe her anus.

Cruz-Basurto was arrested and later interviewed by police. He initially denied ever touching Victim before eventually admitting that he had touched her vagina multiple times. He claimed this was done for the purpose of examining Victim to determine if she was being abused by one of her mother's boyfriends. Cruz-Basurto acknowledged that he lacked any training that would qualify him to perform such examinations or assess signs of sexual abuse.

Cruz-Basurto was charged with four counts of statutory sodomy in the first degree and two counts of child molestation in the first degree. A jury found him guilty of all six counts. The trial court sentenced Cruz-Basurto to consecutive terms of 15 years in the Department of Corrections for each of the four counts of statutory sodomy. The trial court sentenced Cruz-Basurto to ten years for each of the child molestation counts, with those sentences ordered to run concurrent to each other and to the sentences for statutory sodomy. Cruz-Basurto timely appealed. Additional facts will be discussed throughout this opinion.

**Discussion**

Cruz-Basurto raises two points on appeal. In Point I, he alleges that the trial court committed reversible error by overruling his objections to the verdict directors relating to the statutory sodomy counts because they contained a fatal variance from the Information. In Point II, Cruz-Basurto alleges that the trial court plainly erred by sentencing him to consecutive terms of imprisonment for each of the statutory sodomy counts based on a mistaken belief that it was required to do so by law.

*Point I – Variance*

In Point I, Cruz-Basurto alleges there was a material and prejudicial variance between the Information and the verdict directors for each of the statutory sodomy counts. He specifically complains that the Information alleged that the charged conduct was committed for the purpose of

arousing or gratifying *his* sexual desire while the verdict directors defined "deviate sexual intercourse" as conduct performed for the purpose of arousing or gratifying the sexual desire of *any person*.[3]

In Counts I, II, IV, and V, Cruz-Basurto was charged with statutory sodomy in the first degree. Counts I and V alleged that Cruz-Basurto had deviate sexual intercourse with Victim by penetrating her vagina with his finger. Count II alleged that Cruz-Basurto had deviate sexual intercourse with Victim by penetrating her anus with his finger. Count IV alleged that Cruz-Basurto had deviate sexual intercourse with Victim by penetrating Victim's anus with his penis. All four counts alleged that Cruz-Basurto committed the offense "for the purpose of arousing or gratifying the sexual desire of the defendant[.]"

During the instructions conference, the State submitted verdict directors for the statutory sodomy counts that stated as follows:

> As to Count [I, II, IV, or V], if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that [on or about, or between the prescribed dates], in the County of Jackson, State of Missouri, the defendant knowingly penetrated the [vagina or anus] of [Victim] with his [finger or penis], and
>
> Second, that such conduct constituted deviate sexual intercourse, and
>
> Third, that at the time [Victim] was a child less than twelve years old,

---

[3] Cruz-Basurto also argues in Point I that a variance between the Information and verdict directors existed for the child molestation counts. This allegation is not preserved for appeal, and we decline to review for plain error because there was no variance. Child molestation, under section 566.067, RSMo, occurs when a person "subjects another person who is less than fourteen years of age to sexual contact." Cruz-Basurto was charged with two counts of child molestation in that he "knowingly subjected [Victim] who was then less than fourteen years old to sexual contact by touching the breast of [Victim] with the hand of the defendant." "Sexual contact" is defined by section 566.010, RSMo, as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, . . . for the purpose of arousing or gratifying sexual desire of any person." The verdict directors for the child molestation counts required the jury to find that Cruz-Basurto touched Victim's breasts "for the purpose of arousing or gratifying the defendant's sexual desire." There was no variance between the Information and the verdict directors.

4

then you will find the defendant guilty under Count [I, II, IV, or V] of statutory sodomy in the first degree.

Each of these verdict directors then included a definition for "deviate sexual intercourse." Counts I, II, and V, defined "deviate sexual intercourse" as "any act involving the penetration, however slight, of the [female sex organ or anus] by a finger, done for the purpose of arousing or gratifying the sexual desire of any person." The verdict director for Count IV defined "deviate sexual intercourse" as "any act involving the genitals of one person and the anus of another person, done for the purpose of arousing or gratifying the sexual desire of any person."

Cruz-Basurto objected to each verdict director, arguing that "it deviates from the charging instrument which specified that the purpose of the act had to be for defendant's gratification, and the proposed instruction from the state expands that to include the gratification or desire of any person, which is more than what the charging instrument says[.]" The State countered that the definitions provided in the verdict directors were taken from the MAI definition of "deviate sexual intercourse." The trial court overruled Cruz-Basurto's objections.

"When reviewing claims of instructional error, this Court will reverse the circuit court's decision only if the instructional error misled the jury and, thereby, prejudiced the defendant." *State v. Richter*, 504 S.W.3d 205, 211 (Mo. App. W.D. 2016) (citation omitted). In addition, reversal is required only "when the instructional error is so prejudicial that it deprived the defendant of a fair trial." *State v. Zetina-Torres*, 482 S.W.3d 801, 810 (Mo. banc 2016) (citation omitted). "Prejudice occurs when an erroneous instruction may have influenced the jury adversely." *Id*. "However, there is no prejudice if an instruction is an accurate statement of law and supported by the evidence." *Id*.

A variance occurs when the conduct described in the charging instrument differs from the conduct described in the jury instructions. "[W]hen a crime may be committed by any of several

5

methods, . . . the method or methods submitted in the verdict directing instruction must be among those alleged in the information." *State v. Hendren*, 524 S.W.3d 76, 83 (Mo. App. W.D. 2017) (quoting *State v. Lee*, 841 S.W.2d 648, 650 (Mo. banc 1992)). The purpose of this rule is to provide notice to the defendant so that he may prepare a defense against the charge. *Id*. (citations omitted). A variance between the charging document and the verdict directing instructions "is not fatal, and will not require reversal, unless it submits 'a new and distinct offense from that with which defendant was charged.'" *State v. Glass*, 136 S.W.3d 496, 520 (Mo. banc 2004) (quoting *State v. Clark*, 782 S.W.2d 105, 108 (Mo. App. E.D. 1989)). "A variance must be material, and defendant must be prejudiced, to warrant reversal." *Id*. (citation omitted). "Variances are material when they affect whether the accused received adequate notice; variances are prejudicial when they affect the defendant's ability to defend against the charges." *Id*. (citation omitted).

Here, the Information alleged that Cruz-Basurto committed the acts of statutory sodomy "for the purpose of arousing or gratifying the sexual desire of the defendant[.]" In the corresponding verdict directors, the phrase "deviate sexual intercourse" was defined and required the jury to find that Cruz-Basurto committed the acts of statutory sodomy "for the purpose of arousing or gratifying the sexual desire of any person." Cruz-Basurto alleges that this was a material and prejudicial variance because he had "no notice he would need to defend not only acting for the purpose of gratifying his sexual desire . . . but against having the purpose to gratify the sexual desire of *anyone*." The variance in this case was neither material nor prejudicial.

First, Cruz-Basurto's defense to the allegations that he penetrated Victim's anus with both his finger and his penis was a complete denial that any of these acts occurred. This theory was in no way reliant on or affected by whether the charged conduct was committed for the purpose of arousing or gratifying his own or someone else's sexual desires. *See State v. Williams*, 18 S.W.3d

6

461, 469 (Mo. App. E.D. 2000) (finding no fatal variance between the Information and instructions because the defendant denied any involvement in the crime).

Next, as to the statutory sodomy counts relating to vaginal penetration, Cruz-Basurto admitted to touching Victim's vagina multiple times but claimed that his actions were done for the purpose of conducting an examination to determine whether Victim had been abused by one of her mother's boyfriends. In other words, Cruz-Basurto's defense was that he engaged in the vaginal touching with an innocent purpose devoid of any motivation to cause sexual arousal or gratification. Significant to the resolution of this point on appeal, this defense did not rely on any nuance as to who the conduct was intended to sexually arouse or gratify.

Finally, "[t]he identity of the person for whose gratification or arousal [Cruz-Basurto] was acting was not an element of the crime[.]" *State v. Doubenmier*, 444 S.W.3d 921, 931 (Mo. App. S.D. 2014); *see also State v. Gaines*, 316 S.W.3d 440, 455 (Mo. App. W.D. 2010) (finding that statutory sodomy in the first degree requires only "evidence that the culpable conduct was engaged in for the purpose of someone's gratification."). Therefore, the State did not need to prove specifically whose sexual desire Cruz-Basurto intended to gratify or arouse, only that the purpose of Cruz-Basurto's conduct was to arouse or gratify someone's sexual desire.[4] Because such identity was not an element of the offense, the variance could not have submitted a new and distinct offense and could not have been a fatal variance. *See Glass*, 136 S.W.3d at 520 (stating that a variance "is not fatal, and will not require reversal, unless it submits 'a new and distinct offense from that with which defendant was charged.'") (citation omitted).

---

[4] "The language 'for the purpose of arousing or gratifying sexual desire' is meant 'to exclude innocent contacts from being deemed criminal conduct.'" *State v. Gaines,* 316 S.W.3d 440, 456 (Mo. App. W.D. 2010) (quoting *State v. Love*, 134 S.W.3d 719, 722 (Mo. App. S.D. 2004)).

Therefore, because neither defense pursued by Cruz-Basurto was affected by the language deviation, and the inconsistency did not lead to the charging of a new and distinct offense, any variance between the charging instrument and the verdict directing instructions was not fatal and reversal is not warranted. Point I denied.

### *Point II – Sentencing Error*

In his second point, Cruz-Basurto alleges that the trial court plainly erred in sentencing him to consecutive terms of imprisonment on the statutory sodomy counts, arguing the trial court violated his due process rights by imposing consecutive sentences under a mistaken understanding that it was required by law.

Cruz-Basurto was found guilty of four counts of statutory sodomy in the first degree alleged to have occurred during the following date ranges: Counts I and II for conduct that occurred on or about June 1, 2014; and Counts IV and V for conduct that occurred between June 1, 2012 and May 31, 2014.

At the sentencing hearing, the State argued for the maximum sentence and stated that the trial court was required to run the sentences for the four statutory sodomy counts consecutively. Prior to the sentences being imposed, the State again reminded the trial court that the sentences for the statutory sodomy counts had to be run consecutively. Cruz-Basurto's counsel generally argued for "the minimum sentence provided by statute" but made no specific argument, comment or objection directed to whether the sentences for the statutory sodomy counts were statutorily required to run consecutively. The trial court then imposed its sentence:

> On Counts I, II, IV, and V, statutory sodomy in the first degree, I sentence the defendant to 15 years in the Missouri Department of Corrections. By law those counts shall run consecutive to one another.
>
> Counts III and VI, I sentence the defendant to ten years. They shall run concurrent to Counts I, II, IV, and V.

8

Cruz-Basurto did not object to the sentences imposed by the trial court.

Because Cruz-Basurto failed to object to the sentences when they were imposed, this claim of error is not preserved for appellate review. This Court reviews, at its discretion, "plain errors affecting substantial rights" if "manifest injustice or miscarriage of justice results therefrom." Rule 30.20.[5] "Plain-error review begins with a threshold review to 'determine whether or not the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *State v. Tillitt*, 552 S.W.3d 571, 577 (Mo. App. W.D. 2018) (quoting *State v. Williams*, 465 S.W.3d 516, 519 (Mo. App. W.D. 2015) (additional quotations and citation omitted). "If not, we should not exercise our discretion to conduct plain error review." *Id*. at 578. "If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process." *Id*. (quoting *Williams*, 465 S.W.3d at 519).

"In the first prong, we determine whether there is, indeed, plain error, which is error that is evident, obvious, and clear." *State v. Celis-Garcia*, 420 S.W.3d 723, 726-27 (Mo. App. W.D. 2014) (quoting *State v. Ray*, 407 S.W.3d 162, 170 (Mo. App. E.D. 2013)). "If so, then we look to the second prong of the analysis, which considers whether a manifest injustice or miscarriage of justice has, indeed, occurred as a result of the error." *Id*. at 727 (quoting *Ray*, 407 S.W.3d at 170). "A criminal defendant seeking plain error review bears the burden of showing that plain error occurred and that it resulted in a manifest injustice or miscarriage of justice." *Id*. (quoting *Ray*, 407 S.W.3d at 170).

After a careful review of the record from the sentencing hearing, we are persuaded that the trial court believed that it was required "by law" to run the sentences for each statutory sodomy count consecutively and that it sentenced Cruz-Basurto based on this understanding. *See Tillitt*,

---

[5] Rule references are to the Missouri Supreme Court Rules (2012).

552 S.W.3d at 582. However, this does not end the analysis. It is Cruz-Basurto's burden to establish that the trial court's belief that it was statutorily required to impose consecutive sentences on the statutory sodomy counts constituted evident, obvious, and clear error. For the reasons explained below, we find that Cruz-Basurto has failed to satisfy this burden.

*Section 558.026.1, RSMo*[6]

Under the current version of section 558.026.1, RSMo,[7] which came into effect on August 28, 2013, trial courts are required to run multiple sentences for certain sex offenses, including statutory sodomy in the first degree, "consecutively to the other sentences." *See also State v. Contreras-Cornejo*, 526 S.W.3d 146, 152-53 (Mo. App. W.D. 2017) (finding that "[t]his amendment makes clear that multiple sentences for the listed felonies must run consecutive to each other").

Prior to the 2013 amendment, the statute contained similar language and appears to have been similarly designed to mandate consecutive sentences for certain sex offenses.[8] However, the

---

[6] Unless otherwise noted, statutory references are to the Missouri Revised Statutes (2000).

[7] Section 558.026.1, RSMo (2013) states:

> Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except in the case of multiple sentences of imprisonment imposed for any offense committed during or at the same time as, or multiple offenses of, the following felonies:
> (1) Rape in the first degree, forcible rape, or rape;
> (2) Statutory rape in the first degree;
> (3) Sodomy in the first degree, forcible sodomy, or sodomy;
> (4) Statutory sodomy in the first degree; or
> (5) An attempt to commit any of the felonies listed in this subsection. In such case, the sentence of imprisonment imposed for any felony listed in this subsection or an attempt to commit any of the aforesaid shall run consecutively to the other sentences. The sentences imposed for any other offense may run concurrently.

[8] The version of section 558.026.1, RSMo in effect prior to August 28, 2013 stated as follows:

> Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except that, in the case of multiple sentences of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid and for other offenses committed during or at the same time as that rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid, the sentences of imprisonment

Missouri Supreme Court examined the statute and found an ambiguity existed relating to its application in cases involving multiple convictions involving the listed offenses. *See Williams v. State*, 800 S.W.2d 739 (Mo. banc 1990). The Court explained:

> The language [of section 558.026.1] makes it clear that sentences for "rape, forcible rape, sodomy, forcible sodomy, or attempt to commit any of the aforesaid" must be run consecutively to "other sentences," which are defined as "multiple sentences of imprisonment ... for other offenses committed during or at the same time...." The statute establishes two kinds of offenses for sentencing purposes—the listed offenses and "other offenses." It states clearly what the court must do if the defendant is convicted of an offense in each class. It does not, however, say in explicit language what must be done if there are multiple convictions of those offenses listed.

*Id*. at 740. The Court addressed the ambiguity by declaring that trial courts must be afforded "maximum discretion." As a result of *Williams,* prior to the 2013 amendment to section 558.026.1, a trial court was vested with discretion to impose concurrent sentences for multiple counts of the listed offenses. *Id*.

We have already determined that the trial court sentenced Cruz-Basurto under a post-2013 view of section 558.026.1 that *required* consecutive terms of imprisonment. However, in order to prevail on this claim, Cruz-Basurto must establish that the trial court's adherence to the current version of section 526.026.1 was clearly erroneous and that, instead, the pre-2013 version of that provision, which afforded the trial court "maximum discretion," including consideration of concurrent terms of imprisonment, governed his sentencing on the statutory sodomy counts.

### Counts I and II

"As a general rule, penalties imposed for the violations of criminal laws are to be governed by statutes in effect at the time of the commission of the crimes." *State v. Williams*, 936 S.W.2d

---

imposed for the other offenses may run concurrently, but the sentence of imprisonment imposed for the felony of rape, forcible rape, sodomy, forcible sodomy or an attempt to commit any of the aforesaid shall run consecutively to the other sentences.

11

828, 830-31 (Mo. App. W.D. 1996) (citation omitted). Counts I and II were based on conduct alleged to have occurred in June 2014. Therefore, the current version of section 558.026.1 applies. As stated above, under the current language of that section, the trial court was required to run the sentences for statutory sodomy in the first degree "consecutively to the other sentences[,]" including other sentences for statutory sodomy in the first degree. As a result, we find the trial court properly sentenced Cruz-Basurto to consecutive terms of imprisonment for Counts I and II.

*Counts IV and V*

The conduct supporting the statutory sodomy in the first degree offenses charged in Counts IV and V was alleged to have occurred "in between and including June 1, 2012 and May 31, 2014." This admittedly presents a more complicated situation because the charged time period straddled the effective date of the 2013 amendment to section 558.026.1.

Under plain error review, it is Cruz-Basurto's burden to demonstrate that, in the context of the evidence related to these counts, the trial court's reliance on the current version of section 558.026.1 was evident, obvious and clear error resulting in manifest injustice. *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006) ("Manifest injustice is determined by the facts and circumstances of the case, and the defendant bears the burden of establishing manifest injustice"). In other words, Cruz-Basurto must establish that the evidence did not support a finding that the criminal conduct alleged in Counts IV and V occurred after August 28, 2013.

Before proceeding, we address the dissent's position that Point II raises an *ex post facto* claim. Cruz-Basurto's Point Relied On states:

> The court plainly erred in sentencing Mr. Cruz-Basurto to consecutive terms of imprisonment, resulting in manifest injustice, in violation of Mr. Cruz-Basurto's right to due process as guaranteed by the Fifth and Fourteen Amendments of the United States Constitution and article I, §10 of the Missouri Constitution, because the court's sentences were based on a materially false foundation, in that the court

12

> mistakenly believed it was compelled by law to run the sentence for each count of first-degree statutory sodomy consecutively to each other count.

As the foregoing confirms, Point II alleges only a due process violation.[9] The *ex post facto* clause is not referenced in the Point Relied On and is never mentioned, let alone analyzed in Cruz-Basurto's brief. Indeed, it is only the dissent that seeks to inject an *ex post facto* claim into this appeal. Our appellate courts have consistently rejected attempts by appellants to raise arguments for the first time in a reply brief due to the prejudice such conduct imposes on respondents who, under those circumstances, have no opportunity to respond. *See State v. Renfrow*, 495 S.W.3d 840, 845 (Mo. App. W.D. 2016) (refusing to consider a new argument brought for the first time in a party's reply brief); *State v. Plunkett*, 487 S.W.3d 480, 489 n. 7 (Mo. App. S.D. 2016) (same); *State v. Coleman*, 449 S.W.3d 387, 389 n. 1 (Mo. App. E.D. 2014) (same). These concerns are magnified when it is the Court itself that acts untethered to the claims of error raised by the appellant[10] because, in such situations, we abandon our role as jurists and morph into advocates for a party. While undoubtedly well-intentioned, the dissent has, in this instance, crossed that line.

---

[9] The Due Process clause is found in the Fifth and Fourteenth Amendments to the United States Constitution and article I, §10 of the Missouri Constitution. The *ex post facto* clause is separately found in Article I, §§ 9 and 10 of the United States Constitution and article I, §13 of the Missouri Constitution.

[10] The dissent correctly notes that Rule 30.20 permits us to consider, at our discretion, plain errors affecting substantial rights, "[w]hether briefed or not" and cites to the recent case of *State v. Ingalsbe*, 557 S.W.3d 515 (Mo. App. S.D. 2018), decided by the southern district of this Court. In *Ingalsbe*, however, the error was obvious, evident and clear—the defendant was sentenced under a provision that took effect on January 1, 2017 for an offense that was alleged to have occurred in 2016. Neither the facts nor the relevant law was in dispute and, due to the obvious nature of the error, the exercise of discretion to correct the unbriefed mistake did not prejudice the State. By contrast, in the present case, the State presented evidence from the victim that the offenses alleged in Counts IV and V were committed before and *after* the law changed. *Cf. State v. Jackson*, 896 S.W.2d 77 (Mo. App. W.D. 1995) (noting that the State conceded that it did not establish the offense was committed after the change in the law). Moreover, the dissent does not simply apply settled law to clear facts, as was done in *Ingalsbe*, but instead makes sweeping legal proclamations that would have a profound impact on our criminal jurisprudence founded, in some instances, on fragile little or no precedent and does so without the benefit of input from the parties.

Cruz-Basurto argues that his due process rights were violated,[11] the parties briefed that claim and it is that issue that we should decide.

Cruz-Basurto argues that this case is on point with *Tillitt*[12]. It is not. In that case, it was undisputed that the defendant's conduct only occurred *prior* to August 28, 2013. *Tillitt*, 552 S.W.3d at 581.[13] Therefore, it was clear that the trial court plainly erred when it relied on the post-2013 version of section 558.026.1 to sentence Tillitt. By contrast, Counts IV and V alleged that Cruz-Basurto committed the charged conduct before and *after* the current version of section 558.026.1 became effective, and evidence was presented at trial that Cruz-Basurto committed the acts supporting these counts throughout the entirety of the charged time period, *including a significant period after the 2013 amendments to section 558.026.1.*

Cruz-Basurto does not dispute this point but asserts that "there is no way to know for sure when the jury determined the charged act occurred within that time range," and argues that this creates an ambiguity that should inure to his benefit. This approach, however, ignores the standard of review applicable to this unpreserved claim that places the burden on him to show an evident, obvious, and clear error has been committed by the trial court. We will not abandon this requirement and presume such an error.

Cruz-Basurto was charged in Counts IV and V with statutory sodomy in the first degree committed, in part, after the amendment to section 558.026.1. The evidence presented at trial

---

[11] "A sentence passed on the basis of a materially false foundation lacks due process of law and entitles the defendant to a reconsideration of the question of punishment in the light of the true facts, regardless of the eventual outcome." *State v. Pierce*, 548 S.W.3d 900, 904 (Mo. banc 2018) (quoting *Wraggs v. State*, 549 S.W.2d 881, 884 (Mo. banc 1977)).

[12] In *Tillitt*, we cited State v. Johnson, 150 S.W. 3d 132, 138 (Mo. App E.D. 2004) for a proposition that relied on section 1.160(2). However, subsection (2) of section 1.160 had been removed by the time *Tillitt* was decided. *Tillitt's* reliance on Johnson and on section 1.160(2) should be disregarded.

[13] In *Tillitt*, the defendant was charged with five counts of statutory sodomy in the first degree and one count of child molestation in the first degree with the "final alleged offense here occur[ing] in June 2013." *Tillitt*, 552 S.W.3d at 581.

provided a sufficient factual basis from which the jury could have found that the charged conduct occurred after the effective date of the amendment, allowing the trial court to sentence him, as we find it did, in accordance with the amended version of section 558.026.1. Cruz-Basurto has failed to establish that this was evident, obvious, and clear error. Point II denied.

**Conclusion**

The judgment of the trial court is affirmed.

EDWARD R. ARDINI, JR., JUDGE

Gary D. Witt, Judge, concurs.
Alok Ahuja, Judge, dissents in a separate dissenting opinion.



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD80880 |
| | ) | |
| ISIDRO CRUZ-BASURTO, | ) | Filed: March 26, 2019 |
| | ) | |
| Appellant. | ) | |

## DISSENTING OPINION

I respectfully dissent from the majority's rejection of Cruz-Basurto's second Point. I would vacate Cruz-Basurto's sentences on the statutory sodomy counts, and remand the case for resentencing on those counts.

As Cruz-Basurto argues in his second Point, the circuit court sentenced him based on the belief that the court was _required_ to make all four of his sentences for first-degree statutory sodomy consecutive to one another, by operation of the current version of § 558.026.1, RSMo. That statutory mandate became effective on August 28, 2013. The new statute did not apply to two of Cruz-Basurto's four statutory sodomy convictions (Counts IV and V), however, because he was charged with committing those offenses "between and including June 1, 2012 and May 31, 2014." Given the way Counts IV and V were charged and submitted to the jury, it is

not possible to determine whether those offenses occurred after August 28, 2013, when the new, harsher sentencing law took effect.

Under the version of § 558.026.1 applicable to pre-2013 offenses, the circuit court had *discretion* as to whether to make Cruz-Basurto's sentences consecutive or concurrent. *See Williams v. State*, 800 S.W.2d 739, 740 (Mo. 1990); *State v. Tillitt*, 552 S.W.3d 571, 581–82 (Mo. App. W.D. 2018). The fact that the circuit court mistakenly believed that it was *required* to impose consecutive sentences on Counts IV and V, when it actually had *discretion* whether to make those sentences consecutive or concurrent, requires that Cruz-Basurto be resentenced. *Tillitt*, 552 S.W.3d at 582. Given the relationship among Cruz-Basurto's sentences for the four statutory sodomy counts, he should be resentenced on all four counts, not simply Counts IV and V.

## Discussion

## I.

The information charged Cruz-Basurto in Counts IV and V with committing statutory sodomy in the first degree "between and including June 1, 2012 and May 31, 2014." The verdict directors for Counts IV and V (Instructions number 12 and 14) required the jury to find that Cruz-Basurto committed statutory sodomy "on or about between June 1, 2012 and May 31, 2014." Under the instructions, the jury was not required to find that the offenses charged in Counts IV and V occurred on any particular date; more importantly, the jury was not required to find that the

2

offenses occurred before, or after, the amendment to § 558.026.1, RSMo became effective on August 28, 2013.

In its closing argument, the prosecution emphasized that the victim was not required to be specific as to when the offenses alleged in Counts IV and V occurred, and that the jury was not required to find that the offenses occurred at any specific time. The prosecutor explained that, in Counts I through III, Cruz-Basurto was charged with committing sexual offenses against the victim at a specific time ("on or about June 1, 2014") because when the victim reported Cruz-Basurto's conduct in early July 2014, she stated that the last act of abuse had occurred a month earlier. The prosecutor contrasted the verdict directors for Counts IV and V:

> Now we have a range of dates because the girl victim has described when she was in first grade it first happening. Those range of dates will encompass that girl going into first grade, second grade, and coming out of third grade. ***She doesn't have to be exact. The law does not require that. And when it goes on for years, we have to decide whether or not it happened at all.***

(Emphasis added.)

The jury convicted Cruz-Basurto of statutory sodomy on Counts IV and V, for offenses which could have occurred either before, or after, the amendments to § 558.026.1, RSMo became effective on August 28, 2013. In this circumstance, the *ex post facto* clause of the federal and Missouri constitutions[1] prevented the application of the new sentencing statute to Cruz-Basurto. The circuit court relied on a mistaken view of the law when it sentenced Cruz-Basurto based on the belief

---

[1]     U.S. CONST. art. I, § 10, cl. 1; MO. CONST. art. I, § 13.

3

that his sentences on Counts IV and V were subject to the post-2013 version of § 558.026.1.

This Court has addressed this precise issue in two prior cases. In the first, *State v. Jackson*, 896 S.W.2d 77 (Mo. App. W.D. 1995), a child testified that the defendant had sexually abused her on multiple occasions. As in this case, the victim "testified that the first incident occurred when she was in the first grade, and the final incident occurred when she was in the third grade." *Id.* at 79. As in this case, the State charged defendant with committing the first and last acts at specific times. As to the remaining offenses (charged in Counts III through VIII), the State charged only that those offenses occurred "between August 1989 and February 1992." "The sodomy as delineated in Counts III through VIII, according to the victim's testimony, could only be established as having occurred between August 1989 and February 1992." *Id.* at 83.

After the defendant was convicted on all counts, the circuit court sentenced him on Counts III through VIII under a more severe sentencing statute which became effective on August 28, 1990 – in the middle of the charged date range. *Id.* at 83–84. Although the issue – as in this case – had not been properly preserved in the circuit court, this Court agreed with the defendant that the circuit court had committed plain error, and violated the prohibition on *ex post facto* laws, by sentencing him under the post-1990 statute. We explained:

> Counts III through VIII alleged that the defendant committed the sodomy offenses "between August 1989 and February 1992." There is clearly a one-year window of time prior to the effective date of the amendment during which the defendant could have committed some,

4

none, or all of the acts alleged in those counts. . . . All of the sentences imposed on Counts III through VIII exceed the maximum punishment authorized by the [pre-1990 statutes]. As such, the sentences would be in violation of the ex post facto clause since the defendant would be disadvantaged by the harsher penalty. An enhanced penalty which violates the ex post facto laws works a manifest injustice.

In this case, we are unable to make a determination as to whether the sentences are in violation of the ex post facto laws because it is unknown whether the crimes alleged in Counts III through VIII were committed before August 28, 1990. However, since the state failed to establish that any of the offenses alleged in those counts were committed after August 28, 1990, the trial court could not sentence the defendant to the more severe punishment since some of the offenses could have occurred prior to the effective date of the amendment. Sentencing under the amended version of the statute subjected the defendant to the greater punishment of life imprisonment for offenses which, had they occurred prior to August 28, 1990, would have carried a maximum punishment of fifteen years imprisonment. Manifest injustice would result if these sentences were left uncorrected.

*Id.* at 84 (citations omitted).

We followed *Jackson* in *State v. Heckenlively*, 83 S.W.3d 560 (Mo. App. W.D. 2002). In *Heckenlively*, a defendant was sentenced under a statute which became effective on August 28, 1996, even though the State had alleged that the charged offense occurred "between the dates of May 1, 1996, and January 14, 1997." *Id.* at 568. The new statute _required_ that the defendant's sentence be served without eligibility for parole, while under the earlier statute the sentencing court had _discretion_ as to whether the defendant would be parole-eligible. Following *Jackson*, this Court again found plain error in the application of the new statute, where the offense was alleged to have occurred during a date range which straddled the effective date of the new statute:

As in *Jackson*, this court is unable to determine whether the offense was committed after the enhanced "predatory offender" provisions became effective on August 28, 1996, since the offense was alleged to have occurred between the dates of May 1, 1996, and January 14, 1997. Here, too, the State has failed to establish that the offense alleged was committed after the enhanced sentencing provision became effective; therefore, "the trial court could not sentence the defendant to the more severe punishment since . . . the offense [ ] could have occurred prior to the effective date of the amendment." *See* [*Jackson*, 896 S.W.2d at 84]

In this case, as in *Jackson*, sentencing under the amended version of the statute subjected Heckenlively to greater punishment. As a predatory sexual offender, Heckenlively was subject to the minimum sentence of life imprisonment without the possibility of probation or parole for thirty years for offenses which, had they occurred prior to August 28, 1996, would have carried a maximum punishment of thirty years without probation or parole under the then-existing "persistent" sexual offender provision of that same statute . . . The amended version of § 558.018 mandates the more severe punishment provision: "[I]n no event shall a person found to be a predatory sexual offender receive a final discharge from parole." In *Jackson*, this court concluded that "[m]anifest injustice would result if the [ ] sentences were left uncorrected" and remanded for resentencing. Although the trial court could still sentence Heckenlively to thirty years without probation or parole, and any practical effect of resentencing may be doubtful, Heckenlively is, nevertheless, entitled to resentencing under *Jackson*. Accordingly, even though the issue was not raised in the trial court, we vacate the sentence as to the statutory sodomy in the first degree and remand the case to the trial court for resentencing.

*Heckenlively*, 83 S.W.3d at 569.

As in both *Jackson* and *Heckenlively*, Cruz-Basurto was charged in Counts IV and V with offenses that occurred "between and including June 1, 2012 and May 31, 2014," and the jury was instructed that it needed to find only that Cruz-Basurto committed the offenses during that two-year date range. The prosecution emphasized to the jury that the particular time within the two-year range at which the offense occurred was not relevant: the prosecution argued that "[t]he law does

6

not require" that the victim "be exact" as to when the offense occurred, and that the issue was "whether or not it happened at all," not *when* the offense occurred.

As in *Jackson* and *Heckenlively*, given the way Counts IV and V were charged, and the way in which those counts were submitted to the jury, there is no way to determine whether Cruz-Basurto was convicted on those counts for offenses which occurred after August 28, 2013.[2]  In these circumstances, it would violate Cruz-Basurto's rights under the *ex post facto* clauses of the federal and State constitutions to sentence him under a statute which only became effective on August 28, 2013.[3]

## II.

It is significant that the prosecution's charging decisions created this *ex post facto* problem.  The reason we cannot know whether Cruz-Basurto committed the

---

[2]     The victim in this case testified that Cruz-Basurto committed acts which could support his conviction for first-degree statutory sodomy on multiple occasions between the time she was in first and third grade; she was unable to be more specific concerning when the acts occurred.  Given the victim's statements, there is no way in this case to conclude "that Defendant committed none of the acts charged during the time period" prior to the effective date of the new sentencing statute. *State v. Hurst*, 195 S.W.3d 537, 540–41 (Mo. App. E.D. 2006) (distinguishing *Jackson* and *Heckenlively* where evidence established that offense could not have occurred prior to the effective date of new sentencing statute).

[3]     Like in *Heckenlively*, the statutory amendment at issue in this case did not increase the range of punishment, but instead made a harsher disposition *mandatory*, when that disposition was previously *discretionary* with the sentencing judge.  The United States Supreme Court has held that statutes which eliminate a sentencing judge's discretion to impose a more lenient sentence may violate *ex post facto* principles. *Weaver v. Graham*, 450 U.S. 24, 32 n.17, 101 S. Ct. 960 (1981) ("[A] law may be retrospective not only if it alters the length of the sentence, but also if it changes the maximum sentence from discretionary to mandatory." (citing *Lindsey v. Washington*, 301 U.S. 397, 401, 57 S. Ct. 797 (1937)).  A new law which makes consecutive sentencing mandatory can violate *ex post facto* principles, if consecutive sentencing was previously discretionary with the sentencing judge. *State v. Smith*, 291 N.W.2d 25, 28–29 (Iowa 1980).

The circuit court's application of the new version of § 558.026.1, RSMo may be erroneous for an additional reason: the new statute could only apply to the offenses charged in Counts IV and V if those offenses in fact occurred after the new statute became effective on August 28, 2013.  The jury was not required to find the facts which would make the new version of § 558.026.1 applicable, however.  The lack of a jury finding on this factual issue may violate Cruz-Basurto's right to trial by jury. *See, e.g.*, *State v. DeRosier*, 719 N.W.2d 900, 903 (Minn. 2006) (citing *Blakely v. Washington*, 542 U.S. 296, 303–04, 124 S. Ct. 2531 (2004); *Shepard v. United States*, 544 U.S. 13, 25, 125 S. Ct. 1254 (2005)).

7

offenses in Counts IV and V before or after the effective date of the amendment to § 558.026.1, RSMo, is because the State chose to charge him with committing statutory sodomy at an unspecified time within a two-year span. Ordinarily, such lack of specificity in charging a criminal offense is improper: Rule 23.01(b)(3) requires that a charging instrument "[s]tate the date and place of the offense charged as definitely as can be done." Courts have permitted wider date ranges in cases involving sexual abuse of minors, even though the lack of specificity adversely affects the defense, because minor victims are frequently unable to specify exactly when an offense occurred. As explained in a leading case:

> Leeway is necessary in charging sexual abuse and sexual intercourse with minors because children who are the victims of abuse may find it difficult to recall precisely the dates of offenses against them months or even years after the offense has occurred. . . .
>
> The more prudent approach would not allow lack of specificity on the part of the State, *where it is <u>impossible</u> for the State to be more precise*, to act as an absolute bar to prosecution. The defendant is adequately protected by the requirement that the trier of fact must find defendant guilty beyond a reasonable doubt. The trier of fact should be allowed to weigh the witness's inability to specify the exact day and time of the alleged crime, and the subsequent inability of the defendant to establish an alibi defense over so long a period of time, in determining whether the defendant is guilty beyond a reasonable doubt.

*State v. Hoban*, 738 S.W.2d 536, 541–42 (Mo. App. E.D. 1987) (emphasis added). As the Missouri Supreme Court has explained, "[t]ime is not essential in child sexual abuse cases *because it can be <u>impossible</u> to ascertain specific dates* of the sexual abuse." *State v. Miller*, 372 S.W.3d 455, 464 (Mo. 2012) (emphasis added) (citing *Hoban* and other cases).

8

The prosecution made the decision to charge Cruz-Basurto in Counts IV and V with committing acts of statutory sodomy over a two-year period, despite the fact that this large date range undoubtedly made it more difficult for him to defend against the charges. The State was permitted this leeway on the basis that "it can be impossible to ascertain specific dates" when the acts occurred. *Id.* Having received the benefit of charging Cruz-Basurto with felonies committed at an unspecified time within a two-year range, and having told the jury that the law does not require temporal exactitude, the State should not be permitted to now argue that the offenses in Counts IV and V occurred at a more specific time, in order to trigger a harsher sentencing statute. The State must be held to the consequences of its own charging decisions.

**III.**

Cruz-Basurto adequately briefed this issue. His Point Relied On contends that he was entitled to resentencing on the statutory sodomy counts because "the court mistakenly believed it was compelled by law to run the sentence for each count of first-degree statutory sodomy consecutively to each other count." Cruz-Basurto cited caselaw holding that plain error exists where a circuit court sentences a criminal defendant based on a mistaken belief concerning the range of punishment. He also cited caselaw holding that a defendant must "'be sentenced according to the law in effect at the time the offense was committed,'" not under a harsher sentencing law which takes effect at a later date. (Quoting *State v. Tillitt*,

9

552 S.W.3d 571, 581 (Mo. App. W.D. 2018)).[4]  He then argued that this principle applied to his case, "[b]ecause there is no way to know for sure when the jury determined the charged act occurred with that time range, and approximately half of it occurred during the time the previous, ambiguous version of § 558.026 was in effect"; Cruz-Basurto argued that he should receive the benefit of any ambiguity as to when the offenses charged in Counts IV and V occurred.[5]

Admittedly, Cruz-Basurto did not cite to the *Jackson* and *Heckenlively* cases. Those cases apply the general principle which Cruz-Basurto invoked (that new, harsher sentencing laws cannot be applied to pre-enactment offenses) to the specific circumstances of this case (a charging period that straddles the effective date of a new sentencing statute). But while Cruz-Basurto may not have cited the cases which apply the general *ex post facto* principle to the specific factual circumstances of this case, his brief was adequate to present the issue to this Court, and to advise the State of the nature of his claim on appeal so that it could frame an appropriate response.

*Even if* this Court were to conclude that Cruz-Basurto's briefing on Point II was so deficient that the issue should be considered essentially "unbriefed," plain

---

[4]     The cases Cruz-Basurto cited in his briefing applied the non-retroactivity principle found in § 1.160, RSMo, not the constitutional provisions prohibiting *ex post facto* laws. As relevant here, § 1.160 implements the constitutional prohibition on *ex post facto* laws; the analysis is the same under the statutory and constitutional provisions.

[5]     The majority correctly points out that Cruz-Basurto's Point Relied On alleged a due-process violation. Cruz-Basurto relied on the principle that "'[a] sentence passed on the basis of a materially false foundation lacks due process of law . . . .'" *State v. Pierce*, 548 S.W.3d 900, 904 (Mo. 2018) (quoting *Wraggs v. State*, 549 S.W.2d 881, 884 (Mo. 1977)). Thus, Cruz-Basurto's due-process argument depended on the existence of an <u>underlying</u> legal error. Here, Cruz-Basurto argued that his due process rights had been violated because the sentencing court held the erroneous legal belief that it could apply a new, harsher sentencing statute to offenses alleged to have occurred over a period of time which straddled the new statute's effective date. This is exactly the argument which supports reversal.

10

error relief would still be warranted. "Rule 30.20 authorizes this Court to consider 'plain errors affecting substantial rights' *[w]hether briefed or not.*' (Emphasis added.) Although an appellate court should rarely exercise the authority to consider unbriefed errors, the power to do so undeniably exists." *State v. Renfrow*, 495 S.W.3d 840, 848 (Mo. App. W.D. 2016) (Ahuja, J., dissenting).[6]

The Southern District recently granted relief, *sua sponte*, for an unbriefed sentencing error strikingly similar to the one in this case. In *State v. Ingalsbe*, 557 S.W.3d 515 (Mo. App. S.D. 2018), a defendant convicted of two counts of first-degree sexual misconduct argued on appeal that insufficient evidence supported his conviction. The Court rejected that claim. *Id.* at 519–20. Although defendant made no argument on appeal concerning his sentencing, the Court observed that the defendant had been sentenced under the new criminal code, which took effect on January 1, 2017, for offenses which were committed in 2016. The Court explained that, under Rule 30.20, "[a]lthough Defendant has not challenged the length of his sentences on appeal, we are permitted to review the issue *sua sponte* for plain

---

[6]     My dissenting opinion in the *Renfrow* case cited multiple recent Court of Appeals decisions which have granted relief for unbriefed errors:  *State v. Lawrence*, 250 S.W.3d 763, 766–68 (Mo. App. S.D. 2008) (reversing assault conviction where trial court convicted defendant based in part on defendant's admissions when pleading guilty to another charge, and without any waiver by defendant of his right to a trial by jury); *State v. Kimes*, 234 S.W.3d 584, 590 (Mo. App. S.D. 2007) (reversing defendant's ten-day jail sentence because "[i]nfractions are not punishable by jail time"); *State v. Beck*, 167 S.W.3d 767, 772–73 (Mo. App. W.D. 2005) (although not argued on appeal, correcting judgment which convicted appellant of the class B felony of assault in the first degree, where jury verdict only found appellant guilty of the class C felony of assault in the second degree), *overruled on other grounds*, *State v. Bolden*, 371 S.W.3d 802, 805–06 (Mo. 2012); *State v. Collins*, 154 S.W.3d 486, 491 (Mo. App. W.D. 2005) (although not briefed, reversing judgment to the extent it convicted two defendants of erroneous classes of misdemeanors, as compared to jury's verdicts); *State v. Sykes*, 85 S.W.3d 762, 763 (Mo. App. W.D. 2002) (reversing conviction of one count of robbery in the first degree for insufficient evidence); *State v. Montgomery*, 64 S.W.3d 328, 332 (Mo. App. E.D. 2001) (although defendant argued that his conviction for sodomy on Count I should be reversed because the evidence only established deviate sexual intercourse on two occasions, not three, the Court reversed on the separate, unbriefed basis that the evidence did not establish that defendant touched child-victim's penis with defendant's hand).

error." *Id.* at 520. Citing *Heckenlively* and other cases, the Court then found plain error: "[t]he trial court's reliance upon a penalty enhancement provision that was not in effect when the crime was committed violates the prohibition against *ex post facto* laws and constitutes a manifest injustice." *Id.* at 521. The Court vacated the defendant's sentences, and remanded the case to the circuit court for resentencing under the pre-2017 sentencing statutes.[7]

Thus, even if we were to characterize the sentencing issue here as an "unbriefed error," we should nevertheless grant relief where the circuit court erroneously applied a later – and harsher – sentencing statute to Cruz-Basurto's convictions on Counts IV and V.

**Conclusion**

The circuit court mistakenly believed that Cruz-Basurto's sentences on Counts IV and V *had to* run consecutively to his sentences for the other statutory sodomy offenses, when the court actually had *discretion* as to whether those sentences should run concurrently or consecutively. Because of the relationship of Cruz-Basurto's sentences on all of the first-degree statutory sodomy counts, his sentences for each of those offenses should be vacated, and the case remanded for resentencing. I recognize that, even if we remand for resentencing, the circuit court would be free to order – in its discretion – that Cruz-Basurto serve his sentences on Counts IV and V consecutively to his sentences for the other first-degree statutory

---

[7]     The majority argues that *Ingalsbe* is distinguishable because in that case, "[n]either the facts nor the relevant law was in dispute." But the same is true here: the nature of the evidence, charges, and jury submissions relating to Counts IV and V are clear from the record; and the law applicable to this precise situation has been established since *Jackson* was decided more than twenty years ago.

sodomy counts.  Even though "the trial court could still sentence [Cruz-Basurto] to [consecutive terms], and any practical effect of resentencing may be doubtful, [Cruz-Basurto] is, nevertheless, entitled to resentencing under *Jackson*."  *Heckenlively*, 83 S.W.3d at 569.


_____
Alok Ahuja, Judge